UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STARSHA M. SEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV00875 AGF |
| | ) | |
| VATTEROTT EDUCATIONAL | ) | |
| CENTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendant Vatterott Educational Centers, Inc. ("Vatterott") to dismiss Counts V and VI of pro se Plaintiff Starsha M. Sewell's Second Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 63.) For the reasons set forth below, the Court will grant the motion to dismiss Count V and deny the motion to dismiss Count VI.

## FACTUAL BACKGROUND

The facts, as alleged in Sewell's Second Amended Complaint, are as follows:[1]

On June 16, 2009, Vatterott's Director of Resources, Arijana Baskot, a white female, emailed Sewell, an African-American female, an offer letter for a Divisional

---

[1] Sewell's Second Amended Complaint (Doc. 32) is characterized as supplemental to her initial Complaint (Doc. 1) and Amended Complaint (Doc. 16), and contains references to exhibits attached to these documents. Thus, the Court relies on the three documents in describing the facts.

Academic Dean position at Vatterott. The compensation for this position included an $80,000 annual salary, up to $5,000 in relocation assistance, and health benefits. Sewell's start date was set for June 22, 2009.

On June 22, 2009, Sewell relocated from Maryland to Missouri. Sewell reported to work and requested $5,000 in relocation assistance from her supervisor, Susan Race, a white female, who was Vice President of Operations for the Eastern Division. Race did not immediately address Sewell's request. Later that evening, Race told Sewell to use all of June 23, 2009, to find permanent housing. Race assured Sewell that she would be compensated for that day.

On June 23, 2009, Sewell was approved to move in immediately at an apartment complex. She submitted to Race a request for $720 in relocation assistance to cover her security deposit, and Race granted this request. On the same day, Sewell spoke with Marie Sanchez, Executive Assistant to Vatterott's CEO Pam Bell. Sanchez informed Sewell that Vatterott did not have a policy governing relocation assistance. Sanchez then arranged a teleconference between Bell and Sewell so that they could discuss the remaining $4280 that Sewell felt she was owed. Race entered the office during this teleconference and, upon learning that Sewell had complained to Bell, stormed out in anger.

On June 24, 2009, Sewell reported to work and was left in an empty office for three hours. She was provided with equipment, including a Blackberry and laptop computer. Sewell emailed Race to request reimbursement for the cost of her hotel stay, which totaled $360.08 for seven nights.

2

On June 25, 2009, Race asked Sewell to return the Blackberry and laptop. Race told Sewell that "things were not going to work out" and that Sewell was going to be assigned to work from home in Maryland. Sewell contacted Bell for clarification, and Bell told Sewell that she would remain on payroll, but work remotely, and asked Sewell to call her when she returned to Maryland so they could discuss Sewell's new role.

On June 28, 2009, Bell emailed Sewell telling her that there was no need to call her, and directed Sewell to contact the Director of Instructional Design, Jesse Donahue. Donahue informed Sewell that she was assigned a new position as an "off-site/remote, contract Course Developer/Instructional Designer" that did not come with benefits and paid only $3000 per course, with an additional option to teach the course at the rate of $1300 per 10 week course. This new position did not provide for compensation until after the work was completed, whereas the Academic Dean position was compensated biweekly.

On June 29, 2009, Sewell informed Bell that she was "in the dark" about being transferred to the new position. Bell did not respond to Sewell. On July 14, 2009, Scott Casanover, a white male and Vatterott's General Counsel and Vice President of Human Resources, emailed Sewell to inform her that she was terminated effective June 22, 2009. In that email, Casanover stated "Because you never actually relocated to the Saint Louis area, you are not entitled to the $5,000.00 relocation assistance outlined in your original offer letter."

In her Second Amended Complaint, Sewell asserts claims of racial discrimination, gender discrimination, and retaliation in violation of Title VII (Counts I, II and IV);

3

wrongful demotion in violation of 42 U.S.C. § 1981 (Count III); intentional infliction of emotional distress (Count V); and breach of contract in violation of 42 U.S.C. § 1981 (Count VI). Vatterott seeks to have Counts V and VI dismissed by this Court.

## DISCUSSION

**Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the factual allegations in the Complaint. In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (holding that upon considering a motion to dismiss under Rule 12(b)(6), a federal "court must accept as true all of the allegations in a complaint" that are applicable to legal conclusions, but pleadings which present "no more than conclusions, are not entitled to the assumption of truth."); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir. 2005)); *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted) (The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."). A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *C.N. v. Willmar Pub. Sch.*, 591 F.3d 624, 630 (8th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

4

plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

Under this standard, the task of a court is "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible"). "This is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

"In considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n. 4 (8th Cir. 2003) (referring to writings that may be viewed as attachments to a complaint, such as the contracts upon which his claim rests). *See also Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1244 (8th Cir. 2006) (citing Fed. R. Civ. P. 10(c) and noting that " written instruments attached to the complaint become part of it for all purposes. For that reason, a court ruling on a motion to dismiss under Rule 12(b)(6) may consider material attached to the complaint."). Consequently, the factual allegations here are taken from Plaintiff's First Amended Complaint, including its attachments.

5

**Count V - Intentional Infliction of Emotional Distress**

Vatterott first argues that Count V of the Second Amended Complaint must be dismissed for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Missouri's Workers' Compensation Law, Mo. Rev. Stat. § 287.120.2, provides the exclusive remedy for Sewell's common law tort claim of intentional infliction of emotional distress and grants exclusive jurisdiction over such occupational injuries to the Missouri Labor and Industrial Relations Commission.

Missouri case law holds that Missouri Worker's Compensation Law provides a remedy for claims of emotional distress. *See Russell v. United Parcel Serv., Inc.*, 666 F.2d 1188, 1192 (8th Cir. 1981). Furthermore, "the Labor and Industrial Relations Commission has exclusive jurisdiction over 'all instances where an injured person seeks to hold his or her employer liable under any common law tort theory, including intentional torts, for injuries resulting from the work experience.'" *Hollins v. Luxco, Inc.*, No. 4:07CV2035 CDP, 2008 WL 4204819 at *2 (E.D. Mo. Sept. 5, 2008) (citing *Massey v. Victor L. Phillips, Co.*, 827 F.Supp. 597, 599 (W.D. Mo. 1993)).

In Count V of the Second Amended Complaint, Sewell alleges she experienced a "hostile work environment" during the course of her brief employment with Vatterott. Because Sewell's alleged injury of emotional distress arises, essentially, out of work conditions, her claim is precluded by Missouri's workers' compensation law. *See id.* at *2 (holding that Missouri's workers' compensation law precluded a plaintiff's intentional infliction of emotional distress claim when the plaintiff alleged distress arose out of both work conditions and termination); *cf. Kientzy v. McDonnell Douglas Corp.*, 990 F.2d

1051, 1061 (8th Cir. 1993) (holding that Missouri's workers' compensation law did not preclude a plaintiff's intentional infliction of emotional distress claim when the injury did not arise out of the course of her employment, but rather it was solely unemployment that caused her distress).

The Court will therefore dismiss Count V of Sewell's Second Amended Complaint.

**Count VI - Breach of Contract**

Vatterott also seeks to have Count VI of the Second Amended Complaint dismissed because Sewell was an at-will employee. Under Missouri law, in the absence of a contract that specifies the duration of employment or limits the reasons for discharge, either party may terminate the employment relationship at any time, with no liability for breach of contract. *See Baum v. Helget Gas Prods.*, 440 F.3d 1019, 1022 (8th Cir. 2006) (citing *Luethans v. Wash. Univ.*, 894 S.W.2d 169, 172 (Mo. 1995)).

However, Sewell has alleged more than a mere breach of contract. Sewell alleges that Vatterott breached its contract with Sewell for $5,000 in relocation assistance by denying her requested reimbursement for her hotel stay, and further alleges that Vatterott refused to reimburse her for her hotel stay because it "did not want an African American Female in the position of Divisional Academic Dean at Vatterott Educational Centers, Inc." (Doc. 32 at 3, 15-17.) Therefore, Sewell is alleging a violation of § 1981, which guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

The Eighth Circuit consistently has held that an at-will employee may maintain a claim under § 1981 for racially discriminatory employment actions. *Turner v. Ark. Ins. Dep't*, 297 F.3d 751, 759 (8th Cir. 2002); *Skinner v. Maritz, Inc.*, 253 F.3d 337, 339-42 (8th Cir. 2001). Therefore, Sewell need not allege that she could sue Vatterott under Missouri state law for breach of contract; she only needs to allege the existence of a contract, which she has done by alleging the agreement to pay relocation assistance and her at-will employment relationship with Vatterott. *See Skinner*, 253 F.3d at 341.

Vatterott's argument that Sewell failed to allege the essential element of a statement of duration in her contract, which Vatterott contends is fatal to her claim, also is misplaced for the same reason. Under the Eighth Circuit's interpretation of Missouri law, the failure to allege a statement of duration merely prevents Sewell from maintaining a state-law claim for breach of the contractually expressed term of duration. *Id.* Such a failure does not remove the existence of a contract within the meaning of §1981. *Id.*

The Court concludes that Sewell has sufficiently stated a claim that Vatterott breached her employment contract due to racial animus in violation of §1981, and therefore will deny Vatterott's motion to dismiss Count VI of Sewell's Second Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 63) is **GRANTED in part and DENIED in part**. Count V of Plaintiff's Second Amended Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 17) is **DENIED as moot**.

```
                               _____
                               AUDREY G. FLEISSIG
                               UNITED STATES DISTRICT JUDGE
```

Dated this 18th day of July, 2011.