UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STARSHA M. SEWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV00875 AGF |
| | ) | |
| VATTEROTT  EDUCATIONAL | ) | |
| CENTERS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Starsha Sewell brings this action for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq., and for employment discrimination, retaliation and breach of contract under 42 U.S.C. §1981.  Plaintiff also asserts a common law claim for intentional infliction of emotional distress.  Defendant, Vatterott Educational Centers, Inc., discharged Plaintiff, an African-American woman, from her position as Divisional Academic Dean for Defendant's Eastern Division shortly after she was hired for the position.  Plaintiff alleges that Defendant discriminated against her on the basis of her race and gender.  More specifically, Plaintiff alleges Vatterott failed to provide her with $5,000 in relocation assistance and thereafter demoted or discharged her in retaliation for requesting relocation assistance and seeking clarification of Defendant's relocation assistance practices, because she is an African-American woman.

The matter is now before the Court on Defendant's motion for summary judgment (Doc. No. 74).[1]  For the reasons set forth below, the motion for summary judgment will be granted.

## BACKGROUND

The record, viewed in the light most favorable to Plaintiff, establishes that in May 2009, Defendant posted an opening for the position of Divisional Academic Dean for the Eastern Division.  The Academic Dean was to be responsible for managing academic affairs for 13 schools, and was to be based in Saint Louis, Missouri.  Susan Race, Vice President of Operations for Defendant, conducted the search to fill the position and had the authority to hire and fire the Academic Dean.  Plaintiff submitted a resume and, after some preliminary discussions, Race invited Plaintiff to come to Saint Louis to interview for the position.  Vatterott flew Plaintiff to Saint Louis for an interview on June 5, 2009. During the course of the interview, Race told Plaintiff that the successful candidate would need to begin as soon as possible and would be required to relocate to Saint Louis and that Race hoped the individual hired could do so prior to beginning work.  Plaintiff expressed concern about the difficulty of relocating to Saint Louis from her home in Maryland.  At the close of the interview, Race asked Plaintiff to consider whether relocating to Saint Louis within the time frame necessary would be practically and financially feasible for her.

---

[1]    Defendant also belatedly requested a hearing on its motion for summary judgment on October 26, 2011.  In light of the Court's ruling, and because the request is untimely, this motion will be denied.

2

Following the interview, Plaintiff emailed Race about the position, expressing interest, but explaining that she would need a salary 25-40% higher than they had discussed.  She explained that the "increase will allow me to manage the cost of housing in both locations without added hardship or stress, and will allow for a smoother transition."  (Doc. No. 75-7.)  Race responded that she could not meet her salary demand, but stated that the only "compromise" she could make was to explore whether corporate housing would be available for a brief period of time, to facilitate Plaintiff's transition to Saint Louis.  Upon inquiry, Race learned that the corporate apartment was not available. Race then emailed Plaintiff advising her the apartment would not be available and stating, "timing wise this just does not seem like it is going to work out, and as we already discussed, I cannot offer you the salary you are seeking."  (Doc. No. 75-10.)  In addition, Race told Plaintiff that she might not be the best person to fill the position because of the difficulty the relocation requirement presented for her.

In response, Plaintiff sent an email stating, "I wanted to inform you of my decision to transition my family at a later date because the cost of an expedited move is expensive."  She went on to say, "I am ready to work with you and accept the offer as you presented it.  I will just stay in a hotel since corporate housing is not available and can start as soon as possible."  (Doc. No. 75-11.)  Race responded that she would call Plaintiff in the morning, advising Plaintiff that she had "some major concerns" based on what Plaintiff had shared, that she wanted to discuss.  (Doc. 75-12.)  The following day, on June 11, 2009, Race called Plaintiff and advised her that she was concerned about Plaintiff's ability to relocate to Saint Louis.  Among the comments that Plaintiff had made

was that she had talked to her realtor about the sale of her Maryland home, and Plaintiff believed that it would be on the market for a year.  Plaintiff had also stated that she had small children to consider and that the expense of maintaining two households was something that Plaintiff had to consider.  Race advised Plaintiff that she was concerned Plaintiff might not be able to maintain the immediate cost of housing in Saint Louis and maintaining her home in Maryland.  Race was concerned Plaintiff might accept the position, and resign shortly thereafter if she could not afford the housing in both locations or manage the other logistical challenges.

Despite her concerns, Race made the decision to offer Plaintiff the position and Plaintiff received a written offer of employment, signed by Race, by email on June 16, 2009, specifying a salary of $80,000, relocation assistance "not to exceed $5,000," and health benefits.  Among the conditions to the Offer of Employment, the letter specified, "This offer does not constitute an employment contract for any specific period; you are employed at will."  (Doc. 75-13.)  Plaintiff accepted the offer and was to begin work six days later, on June 22, 2009.

On June 22, 2009, Plaintiff reported for work in Saint Louis, planning to stay in a hotel until she could find permanent housing.  Plaintiff testified on deposition that she did not want to use her money to move to Saint Louis.  Based on the offer letter, Plaintiff believed that she would immediately receive a check for $5,000 for relocation assistance. Therefore, on June 22, 2009, Plaintiff requested a check for $5,000 in relocation assistance from Race.  Race attests that she did not understand Plaintiff's request and referred her to Arijana Baskot, Defendant's Human Resources Director.  Baskot could not

explain the terms of the relocation policy off the top of her head, and after looking on the computer she advised Plaintiff that the company would pay for the costs of moving. The relocation process involved obtaining bids from movers, and once the bids were submitted, Vatterott would pay the mover directly for the costs. (Doc. 75-1, pp. 171-72.) Plaintiff believed that what Baskot told her was not consistent with the offer letter, and she advised Baskot that she believed it was inconsistent.

In her deposition, Plaintiff testified that she initially believed she would receive the entire $5,000 relocation allowance as a cash advance, but that after her meeting with Baskot she understood that she would only be reimbursed for actual expenses up to a maximum of $5,000. Defendant contends that its practice was to pay for the move of household goods with payments made directly to the moving company and that no representations were made to Plaintiff to lead her to believe otherwise.

After Plaintiff's meeting with Baskot, Plaintiff had another conversation with Race and Baskot, later that same day, regarding the relocation practice. They explained the practice in the same manner as Baskot had explained it earlier. Race again expressed her desire that Plaintiff be able to begin work immediately and that she have housing that was more permanent than a hotel.

Race told Plaintiff to use all of June 23, 2009, to find permanent housing and that she would be compensated for that day. On the afternoon of June 23, 2009, Plaintiff found an apartment. Although the timing is not entirely clear, Plaintiff returned to the office and decided to approach Ann-Marie Sanchez, Executive Assistant to the CEO, Pam Bell, for clarification of the offer letter with respect to the payment for relocation

assistance.  Plaintiff also asked Sanchez what her perception was of the language of the offer letter with respect to relocation assistance.  Sanchez volunteered to call the CEO, Pam Bell, for clarification.  Sanchez then called Bell on the speaker phone, and advised Bell that Plaintiff was there, and believed she was supposed to have a check for $5,000 and did not get it.  Bell responded that she didn't have the letter in front of her, that she was on her way in, and they could discuss it when she arrived.  At no time did Plaintiff ever complain about the manner in which she had been treated or complain that Race or any other employee of Vatterott had discriminated against her based on her race or sex.

While the conversation with Bell was taking place, Race entered the room and saw what was transpiring.  Plaintiff's perception was that Race was either concerned or upset that Plaintiff had consulted with Sanchez and Bell regarding the relocation practice.

Plaintiff then spoke with Race and advised her that she had found an apartment. She then submitted a request for $720 from the relocation assistance funds for a two-week stay in a hotel until she could move into the apartment.  In her deposition, Race testified that after getting approval, she reluctantly approved Plaintiff's request.  Plaintiff then asked Race if she could use the $720 hotel reimbursement to pay the security deposit for her apartment.  Race also assented to this request, and provided a letter to the apartment manager agreeing to pay the $720 deposit.  On June 24, 2009, Plaintiff made a second request for reimbursement for hotel expenses which Race attests "troubled and confused" her.  After this second request, Race decided to discharge Plaintiff from the Academic Dean position.

On June 25, 2009, Race told Plaintiff "she was no longer the Academic Dean."  In her deposition Plaintiff states that she understood that she was no longer the Academic Dean because Race believed Sewell was "not ready to be in Saint Louis."  Race informed Plaintiff of her termination before Plaintiff signed her lease, asked Plaintiff to return all equipment and materials she had been given, but told her she could keep the $720.

On July 14, 2009, D. Scott Casanover, Defendant's General Counsel and Vice President of Human Resources, sent Plaintiff an email stating that she had been discharged effective June 22, 2009.[2]  In that email, Casanover also stated that "because you never actually relocated to the Saint Louis area, you are not entitled to the $5,000 relocation assistance outlined in your original offer letter."  After terminating Plaintiff, Defendant hired an African-American woman to fill the position of Academic Dean.

Defendant contends that Plaintiff was terminated because Race ultimately did not believe that Plaintiff was "financially or logistically" capable of relocating to Saint Louis, and because Plaintiff did not adhere to Defendant's relocation practice and should not have needed to have the policy explained to her multiple times.  In addition, Defendant contends that Race expected Plaintiff to be capable of securing an apartment without

---

[2]   Plaintiff asserts that she was effectively discharged by Casanover, a white male, and not by Race, the individual who hired her, because the July 14, 2009 email stated that her termination was effective June 22, 2009, rather than June 25, 2009.  It is undisputed, however, that Plaintiff was paid for the period June 22 through June 25, 2009 and that she was given a check for $720 in relocation expenses on June 23, 2009, which she was permitted to keep after her discharge.  Therefore, the Court will assume that Race discharged Plaintiff on the June 25, 2009, and that Casanover's July letter confirming the discharge mistakenly referenced June 22, 2009, and has no effect on Race's discharge of Plaintiff on June 25, 2009.

relying on cash advances from Defendant.  For these reasons Defendant asserts that Plaintiff failed to meet Defendant's reasonable expectations.

 Plaintiff contends that she was terminated because Defendant did not want to give an African-American woman $5,000 in relocation funds, and in retaliation for her requests and inquiries regarding Defendant's relocation assistance practices.

## DISCUSSION

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record.  *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir. 2003); *Mayer v. Nextel West Corp.,* 318 F.3d 803, 806 (8th Cir. 2003).  The moving party bears the burden of showing the absence of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In addition, the court "must not weigh evidence or make credibility determinations."  *Kenney v. Swift Transp., Inc.,* 347 F.3d 1041, 1044 (8th Cir. 2003).

When a  motion for summary judgment is made and properly supported by evidence, the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that "a fact cannot be or is genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Rule 56(c) "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Nonetheless, because discrimination cases often turn on inferences rather than direct evidence, summary judgment should be "cautiously granted" in such cases.  *Jacob-Mua v. Veneman*, 289 F.3d 517, 520 (8th Cir. 2002); *see also Mayer*, 318 F.3d at 806.  Further, because Plaintiff is proceeding pro se, the Court construes Plaintiff's filing liberally.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## Discriminatory Demotion under Title VII

Plaintiff has asserted claims for discriminatory demotion and discharge under Title VII.  With respect to her demotion claims, Plaintiff asserts that she was not discharged but demoted to an intermittent, contract position as a curriculum development specialist. Defendant acknowledges suggesting that Plaintiff might wish to apply for such a position, but denies that Plaintiff was demoted rather than discharged.  It is undisputed that Plaintiff neither performed work for, nor received compensation for any work performed for, Defendant after June 25, 2009, the date Defendant asserts she was terminated. Therefore, the Court concludes that Defendant is entitled to judgment with respect to Plaintiff's claims of discriminatory "demotion," as she was not demoted, but discharged.

**Discriminatory Discharge under Title VII and §1981**

Plaintiff also brings claims for discriminatory discharge on the basis of race and gender under Title VII and 42 U.S.C. §1981.[3]  Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies here, because Plaintiff has offered no direct evidence of racial discrimination. Under this analysis, the employee has the burden of establishing a prima facie case, showing that (1) she is a member of a protected class; (2) she met her employer's reasonable expectations; (3) she suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination.  *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 937 (8th Cir. 2007)*; Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 8th Cir. 2005).

If the employee establishes a prima facie case, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the challenged action.  *Kenney*, 347 F.3d at 1045.  Even if the employer meets that burden, the employee may avoid summary judgment by proffering evidence that the employer's reason was a pretext for intentional

---

[3]   The same elements and analysis apply to discrimination claims under Title VII and §1981.  *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006); *Wright v. Rolette Cnty.*, 417 F.3d 879, 884 (8th Cir. 2005).

discrimination.  *Id.*  Pretext may be shown directly, by showing that the employer was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's explanation is unworthy of credence.  *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1108 (8th Cir. 1998).

Defendant asserts that Plaintiff cannot demonstrate the second and fourth elements of her prima facie case.  Defendant contends that Plaintiff did not meet Defendant's reasonable expectations with regard to her relocation, and that the fourth element is negated by the fact that an African-American woman was ultimately hired for the position.

The Court agrees that Plaintiff's prima facie case is, at best, weak.  The record indicates that Defendant expected Plaintiff to relocate to Saint Louis before beginning employment and clearly communicated this expectation to her.  Race raised her concerns with regard to this issue with Plaintiff, but hired Plaintiff despite her concerns about Plaintiff's willingness and ability to relocate.  Once she was hired, Plaintiff did little to assuage Race's concerns.  Although she searched for and found an apartment, that did not occur until after she began her employment and Plaintiff then requested relocation funds ordinarily reserved to pay for moving expenses to pay her security deposit.  Having used Defendant's funds to make her security deposit, she then asked for additional funds to cover her hotel bill.  She made these requests despite the fact that Defendant's practice regarding the disbursement of relocation funds had been fully explained to her on more than one occasion.

Even if the Court were to conclude that a reasonable juror could find that Plaintiff met Defendant's expectations with respect to relocation and reimbursement for relocation expenses, or that Race's expectations were unreasonable, Plaintiff still has difficulty with regard to the fourth element of her prima facie case.  Defendant contends Plaintiff cannot establish the fourth element because after Plaintiff's discharge, Defendant hired an African-American woman to serve as Academic Dean.  This fact creates an inference of nondiscrimination, but it does not preclude Plaintiff from establishing a prima facie case.  To satisfy this element, Plaintiff need only show that similarly situated employees, *who are not members of the protected group*, were treated more favorably.  *See Russell v. Kansas City*, 414 F.3d 863, 868 (8th Cir. 2005).

Plaintiff does offer evidence that Brandon Shedron, a white male and the former Academic Dean, relocated approximately 250 miles when he took the position and was provided with corporate housing.  By contrast, Plaintiff states that she was to relocate approximately 880 miles but was not provided corporate housing.  The Court is not persuaded that Shedron is "similarly situated" so as to satisfy the fourth element of Plaintiff's prima facie case.  *See EEOC v. Kohler Co.* , 335 F 3d. 766, 776 (8th Cir. 2003).

The undisputed facts establish that when Plaintiff expressed concerns regarding her ability to relocate, Race offered to see whether the corporate apartment was available.  Race did check and determined that it was not available.  Although such housing was not available, there is no indication in the record that this was due to anything other than chance.  Plaintiff offers no evidence that corporate housing was available but was denied

12

to her.  Nor is there any evidence that Race refused Plaintiff corporate housing due to the fact that she was an African-American woman.  The Court therefore concludes that Shedron and Plaintiff are not similarly situated and that Plaintiff has not made a prima facie case under Title VII or 42 U.S.C. §1981. *Id.*

As such, there is nothing in the record, other than the fact of Plaintiff's race and gender, that gives rise to an inference of discrimination.  Indeed, the fact that the same individual both hired and terminated Plaintiff, and was aware of Plaintiff's race and gender when she was hired, and the fact that an African-American woman was ultimately hired to fill the position, suggests Plaintiff's termination was not motivated by discrimination.

Even if Plaintiff had made out a prima facie case, Defendant would still be entitled to judgment because Defendant has offered legitimate, non-discriminatory reasons for Plaintiff's discharge, and Plaintiff has not met her burden to demonstrate that those reasons are pretextual.

In support of its position, Defendant correctly asserts that an inference of nondiscrimination arises from the fact that the same individual, Race, hired and fired Plaintiff.  *See Peterson v. Scott Cnty.*, 406 F.3d 515, 521 (8th Cir. 2005) (citing *Herr v. Airborne Freight Corp.*, 130 F.3d 359, 362 (8th Cir. 1997) (holding it unlikely that the same supervisor would hire an older woman and then discriminate against her on the basis of age and gender)).  In addition to this inference, Defendant asserts several non-discriminatory reasons for Plaintiff's discharge:  Race legitimately believed that Plaintiff was not financially or logistically capable of relocating from Maryland to Saint Louis;

13

Race believed that Plaintiff did not adhere to Defendant's relocation practice and should not have needed to have the policy explained to her on several occasions; and Race expected Plaintiff to secure permanent housing without relying on cash advances from Defendant.

Defendant contends, and the record supports, that Race wanted the person hired for the position to relocate to Saint Louis before the employment began. Race had concerns about Plaintiff's ability to do so, and expressed those concerns before hiring Plaintiff. After Plaintiff arrived in Saint Louis, Race's concerns were not alleviated, as Plaintiff had not secured housing, and upon arriving, repeatedly requested relocation assistance in an amount and for purposes that were not consistent with Vatterott's practices. Nevertheless, Race agreed to permit Plaintiff to apply $720 agreed to for hotel expenses to the security deposit for her apartment. When Race then requested an additional amount for the hotel costs, Race testified that "was the straw that broke the camel's back." In short, the record supports that Race was concerned that the applicant relocate, had concerns about Plaintiff's ability and commitment to do so, and felt Plaintiff's requests with regard to the relocation assistance were unreasonable.

Because Defendant has produced nondiscriminatory reasons for its actions, the burden shifts to Plaintiff to establish that these reasons are pretextual. *See Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997). "One common way to show pretext is with evidence that other similarly situated individuals who were not in the plaintiff's protected class engaged in the same conduct but were treated differently." *Russell*, 414 F.3d at 868. Apart from the argument, noted and rejected above, that Shedron was given access

to the corporate apartment, Plaintiff has offered no evidence of pretext to refute Defendant's proffered reasons for her discharge.  For example, she has not shown that others were provided the type of relocation payments she was requesting.

Defendant's legitimate non-discriminatory reasons for discharging Plaintiff, namely, that she did not appear to be committed to, or capable of, relocating to Saint Louis in the time frame and the manner Defendant desired for the Academic Dean position, and that a dispute arose concerning the relocation assistance that Race found unacceptable, are business decisions related to Defendant's day-to day operations, with which the Court is loathe to interfere.  *Rose-Maston*, 133 F.3d at 1108 (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir.1995) (holding that the employment discrimination laws have not vested federal courts with the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination)).  Plaintiff has offered no evidence that would allow a reasonable finder of fact to conclude that this basis for discharge is pretextual, let alone motivated by Plaintiff's gender or race.  *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007).  Therefore, the Court will grant Defendant's motion for summary judgment with respect to Plaintiff's claims of discriminatory discharge under Title VII and 42 U.S.C. §1981.

## Retaliation Claims under Title VII and §1981

Plaintiff has alleged a claim for retaliation under Title VII and under 42 U.S.C. §1981.  Specifically, she asserts that because she is an African-American female she was

15

terminated in retaliation for requesting clarification of Defendant's relocation practices, and for requesting $5,000 in relocation assistance.  Defendant asserts that it is entitled to summary judgment on Plaintiff's retaliation claims because she has not established facts to support a prima facie claim of retaliation.

Where, as here, there is no direct evidence of retaliation to support an employee's claims, the burden-shifting analysis set forth in *McDonnell Douglas* once again applies. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 936 (8th Cir. 2006).  Under this analysis, the employee must first establish a prima facie case of retaliation[4] by showing that (1) she engaged in statutorily protected activity; (2) the employer took an adverse action against her; and (3) a causal connection exists between the two occurrences.  *Id.*;  *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006).

"Protected activity" in this context includes opposition to employment practices prohibited under Title VII.  *Gilooly v. Mo. Dep't of Health and Senior Servs.*, 421 F.3d 734, 741-42 (8th Cir. 2005).  The Eighth Circuit has recognized that protected activity is not limited to the filing of a formal charge of harassment.  *Green,* 459 F. 3d at 914. Internal complaints or informal complaints to superiors are also protected activity under Title VII. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 854 n. 4 (8th Cir. 2002).  Although a plaintiff need only demonstrate that she had a "good faith, reasonable belief" that the underlying conduct violated Title VII or §1981, *Green,* 459 F.3d at 914; *Gilooly,* 421 F.3d

---

[4]The same elements and analysis apply to retaliation claims under Title VII and §1981.  *McClure v. Career Sys. Dev. Corp.*, 447 F.3d 1133, 1137 (8th Cir. 2006); *Wright v. Rolette Cnty.*, 417 F.3d 879, 884 (8th Cir. 2005).

16

at 742, she must establish a connection between that belief and her opposition to the challenged policy or practice.  *See Hunt v. Neb. Pub. Power Dist*, 282 F.3d 1021, 1028-29 (8th Cir. 2002).

Having considered the arguments of the parties and the factual record before it, the Court concludes that Plaintiff is unable to make out a prima facie case of retaliation under Title VII or §1981, because there is no evidence in the record that she engaged in activity protected under either of these statutes.  Plaintiff has offered no evidence that she made inquiries about the operation of Defendant's relocation assistance practice in order to expose differential treatment directed at women or African-Americans.  The record establishes only that she inquired about the practice in order to understand how it worked, and because she wanted to receive the funds, not because she believed Defendant was administering the policy in a discriminatory manner.  Plaintiff believed she had been offered a fixed amount and that Defendant was not honoring that offer.  In short, Plaintiff had and voiced a financial dispute about the relocation payment, nothing more.  Only after she was terminated did she claim a connection between Defendant's application of the policy and her race or gender.  This evidence alone will not suffice to establish that Plaintiff engaged in "protected activity" for purposes of either statute.  *See Hunt*, 282 F.3d at 1028-29 (8th Cir. 2002); *Van Orden v. Wells Fargo Home Mortg., Inc.*, 443 F. Supp. 2d 1051, 1061 (S.D. Iowa 2006).  Therefore, Defendant is entitled to summary judgment with respect to Plaintiff's claims for retaliation under Title VII and 42 U.S.C. §1981.

**Intentional Infliction of Emotional Distress**

In Count V of her complaint Plaintiff alleges an emotional injury arising from her discharge by Defendant and its refusal to allot her the $5,000 relocation allowance. Construing these allegations as a common law tort claim for intentional infliction of emotional distress, the Court agrees with Defendant that this claim should be dismissed as barred by the exclusive remedy of the Missouri Worker's Compensation Act, Mo. Rev. Stat. § 287.120.2.  *See Killian v. J & J Installers, Inc.*, 802 S.W.2d 158, 160 (Mo. 1991); *Yount v. Davis*, 846 S.W.2d 780, 782 (Mo. Ct. App. 1993).[5]

**Breach of Contract Claim under 42 U.S.C. §1981**

In Count VI of her complaint, Plaintiff alleges that she had an employment contract with Defendant which Defendant breached by failing to provide her with the full $5,000 relocation allowance and by discharging her on account of her race.  Defendant contends it is entitled to judgment because Plaintiff had no employment contract with Defendant.  Upon review of the record the Court agrees that Defendant is entitled to summary judgment on Count VI of Plaintiff's complaint.  Plaintiff testified in her deposition that she had no employment contract with Defendant.  (Def.'s Ex. A at149-50, 399-400; Def.'s Ex. M.)  In addition, Plaintiff acknowledged in her deposition that although she initially misunderstood the operation of the relocation assistance practice, Defendant never offered or agreed to provide her with a full $5,000 relocation allowance. On the basis of this deposition testimony, the Court concludes that no reasonable finder of

---

[5]      Even if Plaintiff's claims were not barred, the Court would decline to exercise pendant jurisdiction after granting judgment to Defendant on Plaintiff's federal claims.

fact could determine that Plaintiff is entitled to recovery on her breach of contract claim. Even if Plaintiff were able to show a contract with Defendant, for the reasons set forth above, she has wholly failed to raise an inference that the contract was breached due to Plaintiff's race.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 74) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for protective order (Doc. No. 58) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's motion for hearing on its motion for summary judgment (Doc. No. 90) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendant's motion for a continuance of the trial setting (Doc. No. 91) is **DENIED as moot**.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 31st day of October, 2011.